**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LINCOLN GENERAL INSURANCE COMPANY** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **NO. 3:10-CV-2307-B** |
| | § | |
| **US AUTO INSURANCE SERVICES, INC.,** *et al.* | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

---

# DEFENDANTS' REPLY IN SUPPORT OF RULE 12(b) MOTION TO DISMISS

---

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone 214.744.5100
Fax 214.744.5101
Email: arich@alanrichlaw.com

**COUNSEL FOR SANTA FE AUTO INSURANCE COMPANY, ALPHA PARTNERS LTD., CSI AGENCY SERVICES, INC., GAMMA GROUP, INC., JAMES D. MAXWELL and JAMES T. MAXWELL**

John W. Arnold
BAILEY/CROWE & KUGLER,L.L.P.
6550 Bank of America Plaza
901 Main Street
Dallas, Texas 75202-5605
Telephone: 214. 231.0555
Fax 214.231.0556
Email: jarnold@bcklaw.com

**ATTORNEYS FOR DEFENDANT
U.S. AUTO INSURANCE SERVICES, INC.**

**Table of Contents**

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.     LGIC's Cause of Action for Conversion of Expiring
              Insurance Policies Against U.S. Auto and Santa Fe
              Fail to State a Claim Because no Duty is Owed to LGIC . . . . . . . . . . . . . . . . . . . 3

       B.     LGIC's Causes of Action for (1) Conversion of Expiring
              Insurance Policies, (2) Breach of Fiduciary Duty Individually
              against Doug Maxwell, and (3) Certain Declaratory and
              Injunctive Relief are Barred by the MOU's Refiling Provision. . . . . . . . . . . . . . 3

       C.     U.S. Auto is not liable to LGIC (1) respecting any fiduciary duty
              to State & County or (2) for having allegedly "converted" funds
              supposedly belonging to State & County, nor (3) is Doug Maxwell
              individually liable to LGIC for allegedly breaching a fiduciary duty to
              State & County – because the LGIC/State & County assignment is invalid. . . . . . 7

       D.     LGIC's Cause of Action Against Doug Maxwell, Individually, for
              Breach of Fiduciary Duty to LGIC and to State & County Must Be
              Dismissed Since There is No Basis Alleged For a Fiduciary Duty To Exist . . . . 10

       E.     LGIC's Cause of Action Against Doug Maxwell for Aiding and Abetting
              Breach of Fiduciary Duty Committed by U.S. Auto fails to State a Claim. . . . . . 15

       F.     LGIC's Alter Ego Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Table of Authorities

***Cases***                                                                    ***Page***

*Barrett v. Clarendon Nat'l Ins. Co.*, 1999 WL 184117 (N.D. Tex., Mar. 26, 1999). . . . . . . . . . . 14

*Colonial Penn Ins. v. Market Planners Ins. Agency, Inc.*, 157 F.2d 1032 (5th Cir. 1998). . . . 11-12

*Harnett, Inc. v. Department of Ins. of the State of Fla.*, 432 So.2d 155 (Fla. App. 1983). . . . . . . 14

*In re C & H News Co.*, 133 S.W.3d 642 (Tex. App. – Corpus Christi 2003, no pet.). . . . . . . . . . . 8

*In re Desiderio*, 213 B.R. 99 (Bankr. E.D. Pa. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Gupta*, 394 F.3d 347 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Koszuth*, 43 B.R. 104 (Bankr. M.D. Fla. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Long*, 774 F.2d 875(8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lincoln General Ins. Co. v. U.S. Auto Ins. Services, Inc.*,
        2009 WL 1174641 (N.D. Tex., Apr. 29, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Redmon v. Griffith*, 202 S.W.3d 225 (Tex. App. – Tyler 2006, pet. denied). . . . . . . . . . . . . . . . . 14

*SCI Texas Funeral Services, Inc. v. Hijar*,
        214 S.W.3d 148 (Tex. App. – El Paso 2007, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sanijet Corp. v. Lexor Intern., Inc.*, 2008 WL 2201451 (N.D. Tex., May 15, 2008). . . . . . . . . . . 3

*Thornton v. Micrografx*, 878 F. Supp. 931 (N.D. Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Turner v. Rhea*, 317 S.W.2d 229 (Tex. Civ. App. – Fort Worth 1958, no writ). . . . . . . . . . . . . . 8

*University of Texas Medical Branch at Galveston v. Allan*, 777 S.W.2d 450
        (Tex. App. – Houston [14[th] Dist.] 1989, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

***Statutes and Rules***                                                                      ***Page***

11 U.S.C. § 523(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Section 21.223, (a)(2) TEX. BUS. ORGS. CODE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Chapter 38, TEX. CIV. PRACT. & REM. CODE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Section 4001.101, TEX. INS. CODE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 4005.101, TEX. INS. CODE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 4053.106(b)(2), TEX. INS. CODE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Florida Insurance Code § 626.734. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Florida Insurance Code § 626.795. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rule 8(a), FED. R. CIV. P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 9(b), FED. R. CIV. P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 12(b)(6), FED. R. CIV. P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


***Other Authorities***                                                                       ***Page***

MERRIAM-WEBSTER ON-LINE DICTIONARY, accessible at
http://www.merriam-webster.com/dictionary/file[4] (accessed on March 9, 2011).. . . . . . . . . . . 4

MERRIAM-WEBSTER ON-LINE DICTIONARY, accessible at
http://www.merriam-webster.com/dictionary/re-?show=0&t=1299700421
(accessed on March 9, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LINCOLN GENERAL INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **NO. 3:10-CV-2307-B** |
| | § | |
| **US AUTO INSURANCE SERVICES,** | § | |
| **INC.,** *et al.* | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants U.S. Auto Insurance Services, Inc. (U.S. Auto), Gamma Group Inc.

(Gamma), CSi Agency Services, Inc. (CSi), Alpha Partners, Ltd. (Alpha), James Douglas

Maxwell (Doug Maxwell), Santa Fe Auto Insurance Company (Santa Fe) and James Thornton

Maxwell (Jim Maxwell) file their Reply Brief in Support of their Motion to Dismiss under Rule

12(b)(6), FED. R. CIV. P.,[1] and for which would show as follows:

### I.    INTRODUCTION

Defendants moved under Rule 12(b)(6) to dismiss several of the Plaintiff's causes of

action, either in whole or in part.  Dismissal was sought because:

(1)    U.S. Auto and Santa Fe are not liable to LGIC for having allegedly "converted" expired insurance policies that did not belong to LGIC, because ownership of the thing "converted" is a necessary element of that cause of action (*See* Section II(A) *infra*), and because this cause of action is barred by the MOU.  *See* Section II(B) *infra*.

---

[1] This Court has already denied the Plaintiff's request for a bond under the Texas Insurance Code; therefore the Motions to Dismiss under Rules 12(b)(4) and (5) are moot and not addressed in this Reply.

(2)      U.S. Auto is not liable to LGIC respecting any alleged fiduciary duty to State & County because the assignment from State & County is invalid.  *See* Section II(C) *infra*.

(3)      U.S. Auto cannot be liable to LGIC for having allegedly "converted" funds supposedly belonging to State & County because the assignment from State & County is invalid. *See* Section II(C) *infra*.

(4)      Doug Maxwell, *individually*, cannot be liable for allegedly breaching fiduciary duties to LGIC (or to State & County) since there is no basis alleged for such fiduciary duties to exist (*see* Section II(D) *infra*), because this cause of action is barred by the MOU's limitation of remedies clause (*see* Section II(B), *infra*) and because the LGIC/State & County assignment is invalid (*see* Section II(C), *infra*).

(5)      Doug Maxwell, as president and shareholder of U.S. Auto cannot, as a matter of law, "aid and abet" any of U.S. Auto's alleged breaches of fiduciary duty, since, aiding and abetting, like other collective torts such as conspiracy, do not view corporate presidents/ shareholders as separate persons with whom the corporation can act collectively.  *See* Section II(E), *infra*.  Furthermore, as to all alleged "aiders and abettors," not only Doug Maxwell, but also Jim Maxwell, CSi, Alpha and Santa Fe, those claims must be dismissed to the extent the breach of fiduciary duty claim is based upon the invalid LGIC/State & County assignment.  *See* Section II(C), *infra*.

(6)      Since LGIC now "withdraws" its alter ego claims against Jim Maxwell, Gamma, CSi, Alpha and Santa Fe, those claims must be dismissed with prejudice, and, as for Doug Maxwell, LGIC has not sufficiently pleaded what "actual fraud" Doug Maxwell committed against LGIC sufficient to pierce the corporate veil.  *See* Section II(F), *infra*.

(7)      Attorney's fees cannot be awarded under Chapter 38 of the Texas Civil Practice and Remedies Code against against Doug Maxwell, Gamma, CSi, Alpha and Santa Fe, as alleged "alter egos" of U.S. Auto.  *See* Section II(F), *infra*.

(8)      Portions of the declaratory and injunctive relief sought must be dismissed because they violate the limitation of remedy provision of the MOU.  *See* Section II(B), *infra*.

## II.    ARGUMENT

### A.    *LGIC's Cause of Action for Conversion of Expiring Insurance Policies Against U.S. Auto and Santa Fe Fail to State a Claim Because no Duty is Owed to LGIC* [2]

LGIC admits in Response that it does not own the policies and thus cannot recover in its individual capacity.  This cause of action must therefore be dismissed,[3] notwithstanding LGIC's assertion that it "may still maintain its conversion cause of action against U.S. Auto and Santa Fe as a result of the assignment from State and County."  Response at 33.   This claim still must be dismissed because (1) LGIC did not plead this cause of action in any capacity other than its own individual one, and (2) allowing this cause of action to be repleaded based on the assignment is futile since, as shown below in Section II(C), *infra*, the assignment is invalid.  *See, e.g., Sanijet Corp. v. Lexor Intern., Inc.*, 2008 WL 2201451, *1 (N.D. Tex., May 15, 2008) ("Futility in the context of a motion to amend means that leave should not be given if the amended complaint would fail to state a claim upon which relief could be granted.")

### B.    *LGIC's Causes of Action for (1) Conversion of Expiring Insurance Policies, (2) Breach of Fiduciary Duty Individually against Doug Maxwell, and (3) Certain Declaratory and Injunctive Relief are Barred by the MOU's Refiling Provision*

The parties do agree on much with respect to this issue.  The parties agree that in the Memorandum of Understanding, LGIC's sole remedy upon failure to complete the actions contemplated by the MOU was to refile the 2007 lawsuit.  Similarly, LGIC did not take issue with the Defendants' statement of Texas law that parties to contracts can limit the available remedies available in the event a contract is not performed as anticipated.  Further, no party has

---

[2] And, it must be dismissed because the claim is barred by the MOU's Limitations of Remedy Clause, *see* Section II(B), *infra*.

[3] Cause of Action B, Complaint at ¶¶ 81-86.

taken the position that the MOU is ambiguous or unenforceable.  The crux of the disagreement is, therefore, what "refile" the 2007 lawsuit means, as determined by the MOU's four-corners.

The MOU's limitation of remedy clause (the "Refiling Provision") was quite specific.  It did *not* say that LGIC could initiate *any* new lawsuit against the Defendants that it wanted.  Instead, the clause specifically states that the 2007 lawsuit could be "refiled."  Thus, if the Refiling Provision has any meaning at all, it means that LGIC is limited to refiling the 2007 case.  That, in turn, must mean that LGIC cannot make claims, assert causes or action nor seek remedies upon re-filing that were not already made in the 2007 lawsuit.[4]

The plain, ordinary meaning of "file" means to "to initiate (as a legal action) through proper formal procedure" or in its intransitive form, "to submit documents necessary to initiate a legal proceeding."  *See* MERRIAM-WEBSTER ON-LINE DICTIONARY, accessible at http://www.merriam-webster.com/dictionary/file[4] (accessed on March 9, 2011).  Thus to "file" an action means just that, to file it, without any temporal or content restrictions.  The MOU does not, however, use the word "file," is uses the word "refile."  The word "refile" is a combination of the word "file" and the prefix "re-."  The plain, ordinary meaning of the prefix "re-" when combined with a verb means "again" as in doing over, or means "back" or "backward" as in going back to a prior state.  *See* MERRIAM-WEBSTER ON-LINE DICTIONARY, accessible at http://www.merriam-webster.com/dictionary/re-?show=0&t=1299700421 (accessed on March 9, 2011).

While accepting that it must abide by the plain meaning of "refile" the 2007 lawsuit, the Plaintiff argues that two other provisions of the MOU place a gloss on the plain meaning of

---

[4] In this regard, it is again worth recalling that this Court denied LGIC leave to amend to file a Second Amended Complaint in the 2007 case.  (CA 3:07-1985-B, Doc.#128)

"refile" the 2007 lawsuit, such that it was allowed to bring causes of action and requests for relief that were not part of the 2007 lawsuit. The Plaintiff's arguments are not persuasive, and are ultimately anathema to the MOU's plain meaning.

Defendants claim that to "refile" the lawsuit, when read "in harmony" with the "tolling" and "dismissal without prejudice" provisions of the MOU (as effectuated by the stipulation of dismissal in the 2007 case), allowed LGIC to file any complaint that it wanted. Plaintiff argues that the tolling provision would be rendered "meaningless" if LGIC were not permitted to assert any cause of action that was tolled, and that the dismissal without prejudice would instead turn into a dismissal "with prejudice" if the term "refile" the 2007 lawsuit limits LGIC to refiling the 2007 lawsuit. Plaintiff's arguments are illogical and fatally flawed.

The "dismissal without prejudice" argument, based on a provision by the same name in the MOU, as effectuated by the stipulation of dismissal without prejudice filed in the 2007 lawsuit, is a red herring. Defendants are not asserting collateral estoppel, *res judicata*, or any other similar preclusion doctrine, so there is no issue here nor under the MOU about whether that MOU provision or the stipulation from the prior action itself have any impact on the Refiling Provision's meaning or language. Furthermore, this particular argument proves too much since the only way to permit "refiling" the case – in any form – was to dismiss *without* prejudice rather than with prejudice.[5]

---

[5] Plaintiff also argues that the stipulation permits refiling *anything*: "Defendants are to be voluntarily dismissed from this action without prejudice to Lincoln General's right to subsequently assert or reassert any claims it may have against Defendants." This language is consistent with the refiling provision of the MOU. As discussed in next paragraph there may be claims, not allowed by the refiling provision, yet tolled by the tolling provision and which can later be brought by LGIC. The stipulation simply implements the refiling provision in a manner consistent with the tolling provision. The stipulation cannot be read to supersede the MOU.

As for the tolling provision, it is easily "harmonized" with the refiling provision in a way that does violence to neither.  That provision's tolling of "all causes of action at issue in the 2007 Action, or otherwise related to the GAAs and RA," can hardly be called meaningless in light of the Refiling Provision, unless one conveniently ignores the issue of "time."  In other words, there is nothing inconsistent about a provision that allows only the refiling of causes of action that have previously been dismissed, with a tolling provision which *also* preserves causes of action, if any, that *first arise during the period of time that the MOU governs the relationship between the parties.*  Far from being meaningless, this provision is a highly beneficial aspect of the MOU since it would have allowed the parties to continue working together under the MOU regardless of any future issues that arose regarding the GAA or the RA.  Thus, it relieves the parties from the need to initiate litigation during the period while the MOU and associated agreements are being performed, thus leaving for another day (if ever) and another forum, the new issues that arise between the parties.

As for the April 30, 2008 letter referenced in the tolling provision, that is another red herring since none of the Plaintiff's claims in the Complaint concern the issues tolled by the April 30, 2008 letter.  Thus, even if the causes of action addressed in the April 30, 2008 letter were somehow incorporated into the meaning of "refile" the 2007 lawsuit, that would not effect the outcome of this motion.

 Indeed, given the clear distinction between the meaning of "file" versus "refile," it is the *Plaintiff's* interpretation that violates canons of contract construction by creating *disharmony* between the tolling provision and the Refiling Provision, and which renders the Refiling Provision meaningless, since under Plaintiff's interpretation, "refile" the 2007 lawsuit completely

and unnecessarily loses its plain meaning by becoming a synonym for "file" *any* lawsuit.

Since LGIC never asserted a cause of action for conversion of expiring insurance policies in the 2007 lawsuit, nor an individual breach of fiduciary duty claim against Doug Maxwell, nor sought the declarations and injunctive relief contained in paragraphs 123-124 and 127(b) of the Complaint, all of these claims and causes of action were not "refiled," but were "filed" for the first time in the Complaint, and must therefore be dismissed pursuant to the parties' agreement contractually limiting the nature of future litigation between them.

**C.**     **U.S. Auto is not liable <u>to LGIC</u> (1) respecting any fiduciary duty <u>to State & County</u> or (2) for having allegedly "converted" funds supposedly belonging <u>to State & County</u>, nor (3) is Doug Maxwell individually liable <u>to LGIC</u> for allegedly breaching a fiduciary duty to State & County – because the LGIC/State & County assignment is invalid**

LGIC, on its own behalf and as purported assignee of State & County,[6] brought a breach of fiduciary duty claim against U.S. Auto.  This cause of action must be dismissed to the extent that LGIC seeks to recover as assignee of State & County (*e.g.*, Complaint, ¶¶ 89-91), since the purported assignment is invalid as a matter of law.  The "Assignment of Rights" that purportedly gives LGIC to right to pursue the breach of fiduciary duty claim against U.S. Auto is unquestionably terminable at the will of the assignor, at any time for any reason.

The Defendants established that this assignment is invalid because of two interrelated problems.  <u>First</u>, the purported assignment is invalid because, under Texas law, a valid assignment cannot be terminable or revocable at will.  <u>Second</u>, assignment of a cause of action is

---

[6] Plaintiff unnecessarily argues in Section B(2)(c) of its Response (p. 32) that the breach of fiduciary duty claim LGIC brings on its own behalf would survive regardless of the outcome of this motion.  As the Defendants noted in their Motion at p. 31, n.18: "As for the breach of fiduciary duty claim LGIC brings on its own behalf, the Defendants will file a Motion for Summary Judgment since documents outside those attached to the Complaint are needed to establish the Defendants' right to judgment."

invalid as contrary to public policy where, as here, it may increase or distort litigation.

In response, the Plaintiff makes a clever, albeit Byzantine argument, which is ultimately illogical and unsupported.  It starts by turning Texas law on its head, arguing that the assignment is *valid* because, in spite of the assignment's plain meaning, it *cannot be revoked*.  Yet, no authority exists for the proposition that an assignment, *that by its plain meaning can be revoked at will*, is still a valid assignment.  To the contrary, Texas law is clear that an assignment is valid only where it *cannot* be terminated or revoked.  Thus, what happens next – "termination," "revocation," etc. makes no difference.  No case has been cited for the proposition advanced by the Plaintiff that even where a purported assignment specifically states that it can be terminated at will, that provision will simply be *disregarded*.  As Plaintiff pointed out in its Response, assignments are contracts.  Even where giving the contract its *plain meaning* results in the contract or a portion thereof being invalidated, *the plain meaning still controls*.  *See, e.g., In re C & H News Co.*, 133 S.W.3d 642, 646 (Tex. App. – Corpus Christi 2003, no pet.); *Turner v. Rhea*, 317 S.W.2d 229, 231 (Tex. Civ. App. – Fort Worth 1958, no writ).

The Plaintiff also argues that the assignment can only be "terminated," which it distinguishes from being "revoked," the difference between the two supposedly being that a "terminated" assignment cannot undo anything that's already been done, and "revoked" means "rescinded," *i.e.* void *ab initio*.  While the Plaintiff makes these arguments in the context of whether the assignment is valid, as seen above this particular exercise in hair-splitting is immaterial to whether the assignment is *valid*.  To be generous, however, Defendants will address this argument as if it were at least germane to the "public policy" aspect of this issue.

-8-

Even assuming, for the sake of argument only, that the assignment were otherwise valid, it would still be invalid for skewing the trial process. The Motion to Dismiss makes it evident that this assignment may skew or distort the trial process. The Plaintiff had no answer to the examples posed, so it argued only that despite the plain language of the assignment, State & County either *cannot* terminate it, or "termination" (versus revocation) of the assignment wouldn't matter. The difference between "termination" versus "revocation" was said to be critical because (1) termination won't affect this action since it has already been brought based on the assignment; and (2) the assignment is "irrevocable" based on principles of estoppel. If, as the Plaintiff might argue, it will always have the right to pursue claims on behalf of State & County regardless of State & County's future actions with respect to the assignment, the assignment cannot "skew the trial process." This argument would not withstand scrutiny.

First, whether or not the assignment can be "terminated" versus "revoked" is immaterial to the outcome, since even if Plaintiff were correct that any "termination" would be prospective only, that gains Plaintiff nothing. It means only that as assignee, LGIC would have had the power to bring the lawsuit on behalf of the assignor and maintain it until termination. After termination, however – and doing no harm to what has happened in the past – the Plaintiff would *no longer* have the right to maintain the assignor's causes of action, meaning that those causes of action must at that point be dismissed. The skewing of the trial process, as established in the unchallenged examples presented in the Motion to Dismiss, would still occur following "termination" (or revocation).

Second, even if it were possible, as argued by the Plaintiff, for the assignment to survive termination based on various theories of estoppel, that simply introduces a different type of

"skewing" or "distortion" into the trial process of this case.[7]  Where, as here, an assignment

plainly states that it is terminable at will, is terminated, and that termination is challenged, at very

least a fact issue exists as to whether *any* reliance on the at-will assignment, or *the extent* of that

reliance, was "reasonable."  So, when State & County terminates the assignment, and LGIC

asserts that the termination was ineffective on estoppel grounds, what is supposed to happen?

*That issue must be litigated*.  Where?  When?  Over how long a period would this case have to be

stayed while satellite litigation is pursued?  What happens to this case if the termination occurs

during trial or at another critical juncture?  Once again, it is obvious that this assignment will

skew or distort the trial process regardless of whether estoppel is theoretically available to fight a

termination.  Indeed, the assignment will to skew the trial process here in ways yet unthought of.

      Since the assignment is invalid, LGIC's breach of fiduciary duty claim must be dismissed

where LGIC sues U.S. Auto and Doug Maxwell as assignee of State & County, and where it sues

U.S. Auto for "conversion" of funds belonging to State & County.

**D.**    **LGIC's Cause of Action Against Doug Maxwell, Individually, for Breach
of Fiduciary Duty to LGIC and to State & County Must Be Dismissed
<u>Since There is No Basis Alleged For a Fiduciary Duty To Exist</u>** [8]

      LGIC alleges in Cause of Action F (Complaint, ¶¶ 99-103) that Doug Maxwell, the

president of U.S. Auto, breached fiduciary duties owed to LGIC and State & County.  The

---

[7] This portion of the Plaintiff's argument does in fact cite to one case that actually deals with an assignment.  However, the case cited, *University of Texas Medical Branch at Galveston v. Allan*, 777 S.W.2d 450 (Tex. App. – Houston [14th Dist.] 1989, no writ), does not have anything relevant to say about the case at bar.  This case does not concern an assignment of a cause of action, or one terminable at will, and at most stands for the general proposition that in a proper case an assignee may assert defenses to the terms of an assignment.

[8] This cause of action is also barred by the the MOU's Limitation of Remedies Clause (*see* Section II(B), *supra*) and because the LGIC/State & County Assignment is invalid (*see* Section II(C), *supra*).

-10-

Motion to Dismiss showed that the Complaint fails to state a claim for breach of fiduciary duty against Doug Maxwell, individually.  In Response, LGIC makes three arguments.  First, it argues that since Doug Maxwell was a licensed managing general agent (as was U. S. Auto) the Insurance Code imposes a fiduciary duty on him individually.  Second, it argues that under the decision in *Colonial Penn Ins. v. Market Planners Ins. Agency, Inc*., 157 F.2d 1032 (5th Cir. 1998), Texas law imposes liability on the president of an insurance agency where there are "unremitted premiums."  Third, it argues that a corporate officer may be held liable for the corporation's breaches of duty, relying on cases arising under a provision unique to federal bankruptcy law – statutory non-dischargability of debts.  None of these bases are valid.

First, LGIC's Insurance Code argument is fatally flawed because *Doug Maxwell was not the Managing General Agent here* – U.S. Auto was the Managing General Agent.  Defendants would also note that LGIC did not plead (because it would not be true) that Doug Maxwell was its, or more precisely State & County's, Managing General Agent, nor did it plead Section 4053.106 of the Insurance Code.[9]

---

[9] LGIC's additional citations to Sections 4001.106(b)(2) and 4005.101 of the Insurance Code to support individual liability on Doug Maxwell, neither of which were pleaded in the Complaint, is baffling.  The first provides only that the Insurance Department shall issue a license to a corporation or partnership if the department determines that an officer of that corporation and all other employees who would be acting as insurance agents are individually licensed.  The second gives the insurance commissioner power to discipline licensees. Significantly, LGIC has not cited a single case that creates a private right of action under any of insurance code sections it discusses.  Absent a private right of action, Texas law does not permit the bootstrapping of statutory duties into elements of tort or contract claims.  *See, e.g., SCI Texas Funeral Services, Inc. v. Hijar*, 214 S.W.3d 148, 154-55 (Tex. App. – El Paso 2007, pet. denied) (where there were no private rights of action for damages under the Texas and federal laws governing funerals, those laws did not create civil legal "duties" that, when breached, are enforceable under tort or contract law.)

Second, LGIC reads way too much into the *Colonial Penn* decision, the holding of which was based on garden-variety common-law agency principles.  In *Colonial Penn*, the Fifth Circuit held that under the circumstances of that case, it was not plain error for the District Court to have found that the individual who was president of the corporate insurance agency was *himself, individually* (along with the company) *the Local Recording Agent* of Colonial Penn.  As such, he was of course jointly and severally liable along with the company.  Here, however, as with its first argument, LGIC has not pleaded, nor can it honestly plead that Doug Maxwell, *individually*, was the Managing General Agent of State & County or LGIC.  Absent such agency, *Colonial Penn* is not apt.

Third, LGIC's reliance on decisions under the Bankruptcy Code non-dischargability provisions is misplaced because those decisions are *sui generis*, heavily dependent on other states' laws, and their holdings as interpreted by LGIC are contrary to settled principles of Texas law.  LGIC's argument is based on cases applying 11 U.S.C. § 523(a)(4), which provides that where there is a fiduciary relationship, defalcation leads to non-dischargability: "(a) A discharge under section 727 of this title does not discharge an individual debtor from any debt-...(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Thus, in many cases, creditors seek non-dischargabilty by alleging the existence of a "trust," so that the debtor's actions taken with funds allegedly owed to that creditor can be characterized as having been in a "fiduciary capacity."  *See, e.g., In re Desiderio*, 213 B.R. 99, 102-3 (Bankr. E.D. Pa. 1997).

Importantly, while federal law determines what type of "trust" is sufficient to invoke non-discharagbility as well as what conduct is sufficient to do so, state law determines whether a

fiduciary relationship exists.  *See, e.g., In re Gupta*, 394 F.3d 347, 349 (5ᵗʰ Cir. 2004).  Thus, it is

telling that *none* of the non-dischargability cases cited by LGIC contain any discussion of

whether *Texas law* imposes an individual "fiduciary duty" on the president of a corporation to a

counter-party to a corporate contract that is alleged to create a fiduciary duty on the part of the

company.

LGIC relies most heavily on a Sixth Circuit decision, *In re Interstate Agency, Inc.*, 760

F.2d 121 (6ᵗʰ Cir. 1985), which held that the president of an insurance agency was liable to an

insurance company for unremitted premiums.  Michigan law provided that the corporate agency

held premiums in trust and that trust was breached.  *Id.* at 124.  The District Court ruled,

however, that the president of the agency was not personally liable for the corporate breach of

duty because the corporate veil could not be pierced.  *Id*. at 125.  The Court of Appeals reversed.

Although its reasoning is difficult to follow, it appears that the Court of Appeals reversed

because a corporate officer is liable for his or her own "tortious injury" caused to another person,

regardless of whether the officer was acting solely in a corporate capacity – and under Michigan

law, "participation in" the corporation's breach of fiduciary duty was an independent tort for

which the president was liable.  *Id.*  Thus, this decision does *not* stand for the proposition that the

president, individually, owed a fiduciary duty to the insurance company, only that under

Michigan law he was liable in tort for *participating in the corporation's* breach of fiduciary duty.

This is an important distinction since LGIC incorrectly cites this case for the proposition that a

corporate officer/sole shareholder has, *by status alone*, a fiduciary relationship with anyone with

whom the corporation has a fiduciary relationship.  Response at 34.

All of the other Bankruptcy Code non-dischargability cases cited are similarly not instructive or helpful here because of the unique state laws involved, and how those laws interrelate with the Bankruptcy Code.[10]  Ultimately, what does becomes quite clear from reviewing these decisions is that it is dangerous to apply non-dischargabilty cases outside their own context and untethered to the unique provisions of state law that drive their results.  *See In re Long*, 774 F.2d 875, 879 (8th Cir. 1985) ("We question, however, the propriety of imposing a corporation's fiduciary duties on a stockholder-employee in the absence of such a local rule, and decline to do so outside the special contexts in which the doctrine arose.").

As established in the Motion to Dismiss, there is no basis under *Texas law* to impose a fiduciary duty on Doug Maxwell individually, since both under the Insurance Code and under the common law (which as applied in this case depends on whether the contracts at issue impose such a duty on Doug Maxwell, individually), the only conceivable Defendant about which it can be alleged that a fiduciary duty existed is the Managing General Agent, U.S. Auto.[11]

---

[10] LGIC also places emphasis on a Florida bankruptcy court decision in *In re Koszuth*, 43 B.R. 104 (Bankr. M.D. Fla. 1984).  That case, however, was driven by policy arguments applicable to the non-dischargability provisions, *id.* at 107, and its particular holding – that a corporate officer assumes a fiduciary duty to a creditor whenever the corporation has such a duty – is contrary to Texas law, like the alter ego statute, which specifically shields corporate officers from liability for contract-related corporate torts, absent the officer's *actual* fraud.  Notably, breach of fiduciary duty is not actual fraud, but at most constructive fraud.  *See, e.g., Redmon v. Griffith*, 202 S.W.3d 225, 240 (Tex. App. – Tyler 2006, pet. denied).  The Response also quotes from a decision of this District in *Barrett v. Clarendon Nat'l Ins. Co.*, 1999 WL 184117 (N.D. Tex., Mar. 26, 1999).  *Barrett* was a case decided under Florida, not Texas law.  Interestingly though, the holding in *Barrett* was based on sections of the Florida Insurance Code (§§ 626.734 and 626.795) and a case interpreting those sections (*Harnett, Inc. v. Department of Ins. of the State of Fla.*, 432 So.2d 155 (Fla. App. 1983)) that specifically imposed liability on corporate officers of insurance agencies for their agencies' breaches of fiduciary duty.  *Barnett*, at *2.  The rationale in *Barrett* is unique to Florida law, or at least foreign to Texas law.

[11] U.S. Auto, of course, denies it has owed LGIC any fiduciary duty whatsoever, and, even if such a duty is determined to have been owed, denies that it was breached in any way.

-14-

Absent a viable "tort" claim alleged by LGIC against Doug Maxwell individually, cases holding corporate officers liable for their own torts are immaterial. Here, since there is no basis upon which to impose an individual fiduciary duty to LGIC on Doug Maxwell, there is no viable breach of fiduciary duty claim against him. Similarly, while Michigan law may recognize a cause of action against a corporate officer for "participating in" a corporate tort, Texas does not. *See* Section II(E), *infra* (no cause of action is stated against a corporate president for aiding and abetting (*i.e.* "participating in") a corporate breach of fiduciary duty.) This Court must dismiss the individual breach of fiduciary duty claim made against Doug Maxwell.

### E.  *LGIC's Cause of Action Against Doug Maxwell for Aiding and Abetting Breach of Fiduciary Duty Committed by U.S. Auto fails to State a Claim*

A president of a company accused of breaching a fiduciary duty cannot "aid and abet" that breach, since corporate officers are not considered to be third-parties of their companies. LGIC does not take issue with the Defendants statement of the law, arguing instead that because Doug Maxwell is not a party to the GAA, and thus has no fiduciary duty arising from that document, he is a "third-party" and consequently capable of aiding and abetting U.S. Auto's alleged breach of fiduciary duty. The logic is lost on the Defendants. Just because Doug Maxwell is not a party to *the agreement* from whence the fiduciary duty is alleged to flow, does not make him a "third-party" to *the company*, and does not mean that he is a person legally capable of aiding and abetting, or conspiring with the corporation. LGIC cites no cases in support of its unique view of collective torts, and none can be found. Dismissal is required.

### F.  *LGIC's Alter Ego Allegations*

LGIC has not opposed the Motion to Dismiss, indeed it has "withdrawn" its alter-ego allegations against Jim Maxwell, Gamma, CSi, Alpha and Santa Fe. These claims must therefore

be dismissed with prejudice.   The Chapter 38 attorney's fees sought against them, predicated on alter-ego liability for breach of the GAA, must also be dismissed.

The remaining alter-ego allegation against Doug Maxwell must be dismissed because LGIC has both failed to plead that Doug Maxwell engaged in actual fraud for his own direct personal benefit, and failed to plead what particular things *Doug Maxwell* supposedly did (as opposed to the generic term "Defendants" or "The Maxwell Group") that amount to actual fraud.

LGIC's response is two-fold.   First, it claims that it *has* pleaded actual fraud with particularity.   Second, it argues that it was *not required* to plead actual fraud since that it is an element of alter-ego liability only in "contract" cases.

Taking the second argument first, oddly, LGIC fails to cite or discuss this Court's opinion in the prior iteration of this case.   That opinion, which is certainly entitled to precedential treatment amongst the same parties, if not law of the case status, squarely held that all of the causes of action brought by LGIC fall under the alter-ego statute.[12]

LGIC's other argument fares no better.   The paragraphs parsed from the Complaint simply do not allege *actual fraud* in a sufficient manner to satisfy Rule 9(b), even Rule 8(a).   The most LGIC can argue is that it pleaded *constructive* fraud (breach of fiduciary duty), that it says once in its 36-page, 140+ paragraph complaint that *the Defendants* had a "dishonest purpose" in

---

[12] *Lincoln General Ins. Co. v. U.S. Auto Ins. Services, Inc.*, 2009 WL 1174641, *6 (N.D. Tex., Apr. 29, 2009) ("Section 21.223 limits liability for 'any contractual obligation of the corporation *or any matter relating to or arising from the [contractual] obligation*.' TEX. BUS. ORGS. CODE § 21.223(a)(2) (emphasis added).   The basis of the duties the Defendants allegedly breached and the agreements on the proper appropriation of funds both have their genesis in the Agreements between the Lincoln General and U.S. Auto.   Thus, while the claims to which Lincoln General refers are tort claims, these claims arise from and are directly related to the contractual obligations.   *See* TEX. BUS. ORGS. CODE § 21.223(a)(2).   Therefore, all of the claims for which Lincoln General seeks to pierce the corporate veil fall within the requirements of section 21.223.")

making certain distributions, and that it pleaded once in another place that *U.S. Auto* had "improper purposes" in doing other things.  Indeed, of the seven paragraphs of the Complaint cited in the Response (of a total of 140 paragraphs), the only allegations directed solely against Doug Maxwell are that he "admitted" that IBNR had been excluded from commission calculations and that he wrote a letter predicting what LGIC's ultimate "margin" would be.  This is hardly sufficient to plead Doug Maxwell's supposed "actual fraud."[13]  Furthermore, since the only things that even remotely sound like dishonest acts are directed against other defendants or groups of defendants, actual fraud has not been pleaded with particularity as to Doug Maxwell. *Thornton v. Micrografx*, 878 F. Supp. 931, 938 (N.D. Tex. 1995).  Since alter ego has not been sufficiently pleaded as to Doug Maxwell, those allegations must also be dismissed.

## III.   <u>CONCLUSION</u>

This Court must dismiss several claims and causes of action for failure to state a claim upon which relief may be granted, and set forth specifically in Section I, *supra*.

---

[13] LGIC states that its allegations are "sufficiently specific, explicitly detailing the facts underlying the claims to the extent such did not lie within the Defendants' exclusive knowledge and control."  Response at 41.  Aside from the fact that it is simply not the case that there are detailed allegations of what Doug Maxwell supposedly did constituting an "actual fraud," to the extent that LGIC is also seeking shelter from the fraud pleading standards based on cases that do so under the "exclusive knowledge and control" theory, Defendants note that under the circumstances here – the discovery period in the 2007 case had ended and the case was ready for trial – those cases are just not applicable.

Respectfully submitted,

By: s/ Alan B. Rich
   Alan B. Rich
   State Bar No. 16842350

   4244 Renaissance Tower
   1201 Elm Street
   Dallas, Texas 75270
   Telephone 214.744.5100
   Fax 214.744.5101
   Email: arich@alanrichlaw.com

**ATTORNEY FOR DEFENDANTS
SANTA FE AUTO INSURANCE COMPANY,
ALPHA PARTNERS LTD., CSI AGENCY
SERVICES, INC., GAMMA GROUP, INC.,
JAMES D. MAXWELL AND
JAMES T. MAXWELL**

By: s/ John W. Arnold
   John W. Arnold
   State Bar No. 00795231

   BAILEY | CROWE & KUGLER,L.L.P.
   6550 Bank of America Plaza
   901 Main Street
   Dallas, Texas 75202-5605
   Telephone: (214) 231-0555
   Facsimile: (214) 231-0556
   Email: jarnold@bcklaw.com

**ATTORNEYS FOR DEFENDANT
U.S. AUTO INSURANCE SERVICES, INC.**

CERTIFICATE OF SERVICE

  I certify that on the 10th day of March, 2011, this document was served via ECF upon the Plaintiff's counsel: William N. Radford of Thompson Coe.

       /s/ Alan B. Rich