UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LINCOLN GENERAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-2307-B |
| | § | |
| U.S. AUTO INSURANCE SERVICES, INC., *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Rule 12 Motions to Dismiss (doc. 19), filed January 1, 2011. For the reasons stated below, the Court finds the Motions should be and hereby are **GRANTED in part** and **DENIED in part**.

### I.

### BACKGROUND

This case involves the alleged miscalculation and underpayment of amounts owed to Plaintiff Lincoln General Insurance Company ("Lincoln General") by Defendant U.S. Auto Insurance Services, Inc. ("U.S. Auto"). Lincoln General is the reinsurer of a variety of auto insurance policies sold by U.S. Auto, as Managing General Agent for State and County Mutual Fire Insurance Company ("State and County"). (Pl.'s Original Compl. ¶¶ 1). Pursuant to General Agency Agreements ("GAAs") and Reinsurance Agreements signed in 2002 and 2003 between the foregoing entities, Lincoln General alleges that it was entitled to a portion of the premiums collected on the

policies sold by U.S. Auto. (*Id.* ¶ 1, 28). U.S. Auto's responsibilities under the Agreements included the "collection and handling of premiums." (*Id.* ¶ 33). The Agreements "also required U.S. Auto to provide Lincoln General with monthly reports detailing and calculating the amounts owing to Lincoln General." (*Id.* ¶ 42). In exchange for its services, U.S. Auto was to receive certain commissions. (*Id.* ¶ 34).

In April, 2007, U.S. Auto transferred its reinsurance business from Lincoln General to one of its own subsidiaries, Santa Fe Auto Insurance Company ("Santa Fe"). (*Id.* ¶ 46). Around that same time, U.S. Auto also purportedly began withholding premiums due to Lincoln General. (*Id.* ¶ 59). Lincoln General alleges U.S. Auto, in order to increase its own compensation, stopped using the method it had used for calculating its commissions under the Agreements for the prior four years, instead using a system of calculation that withheld and misappropriated millions of dollars from Lincoln General to U.S. Auto. (*Id.* ¶¶ 46-56). Two lawsuits followed.

Lincoln General first brought suit against Defendants for the above-described conduct on November 27, 2007. [1] (*See generally* Pl.'s Compl., *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.,*

---

[1] In the 2007 case, as in this case, Lincoln General alleged that several entities and individuals related to U.S. Auto were also liable for the same or similar conduct. Of these other Defendants, U.S. Auto is affiliated with Defendants Gamma Group Inc. ("Gamma"), CSI Agency Services, Inc. ("CSI"), Alpha Partners, Ltd. ("Alpha"), and Santa Fe, sharing both a business address and office space with them. (*Id.* ¶ 19). According to Lincoln General, these companies have allegedly "acted as guarantors for at least some of each others' liabilities, sponsor[ed] and administer[ed] shared benefit plans, share[d] (at least in part) common ownership and leadership, . . . combined financial statements (at least with regard to all companies but Santa Fe . . .), and share[d] and integrate[d] their resources to achieve the common business purpose of providing insurance-related services." (*Id.*). Defendant Doug Maxwell has substantial ownership interests in these companies and maintains significant control over them, holding various leadership positions in each. (*Id.* ¶ 20). He is also alleged to have commingled his personal assets with those of the companies. (*Id.* ¶ 21). Defendant Jim Maxwell is Defendant Doug Maxwell's father, who allegedly provided substantial funding to the companies and "intentionally and willfully assisted, induced, and/or conspired" in U.S. Auto's contravention of the Agreements. (*Id.* ¶¶ 22, 59).

No. 3:07-cv-1985-B (N.D. Tex. Nov. 27, 2007)).  In that case, Lincoln General brought claims of breach of contract, tortious interference with contract, breach of trust and/or fiduciary duties, aiding and abetting breach of trust and/or fiduciary duties, misappropriation and conversion of funds, unjust enrichment, and equitable accounting.  (Pl.'s Am. Compl. ¶¶ 56-83, *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-cv-1985-B (N.D. Tex. May 1, 2008).  In May 2009, the parties stipulated to the dismissal of the entire case without prejudice, representing to the Court that they had entered into an agreement that settled all pending claims.  (Stip. Dismissal, *Lincoln Gen. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-cv-1985-B (N.D. Tex. May 7, 2009)).  As a condition of their settlement, the parties signed a Memorandum of Understanding ("MOU"), which included a provision stating, "[i]n the event that the parties are not able to complete all of the actions required under this Memorandum of Understanding . . . , Lincoln's sole remedy shall be to refile the lawsuit." (Pl.'s Original Compl. Ex. B. [hereinafter "Mem. of Understanding"] § IX).

On November 12, 2010, Lincoln General filed its Original Complaint in the instant action, re-alleging its 2007 claims and adding other claims (doc. 1).  On January 10, 2011, Defendants filed the instant Motion to Dismiss (doc. 19), seeking dismissal of Plaintiff's claims under Rules 12(b)(4), (5), and (6).  Defendants have since withdrawn their Motions under Rules 12(b)(4) and 12(b)(5).[2]

---

[2] Defendants state that their Motions to Dismiss under Rules 12(b)(4) and 12(b)(5) are moot in light of the Court's February 11, 2011 denial of Lincoln General's Motion for Certain Defendants to Post Bond (doc. 31).  Because that Order was issued without opinion, the Court notes, in passing, that such denial is based on the premise under Texas law that only an insured or a third-party beneficiary of an insured may make use of the bonding provisions of the Texas Insurance Code.  *See Parra v. Markel Int'l Ins. Co.*, 300 F. App'x 317, 319 (5th Cir. 2008) ("[T]o have standing to assert rights under the Texas Insurance Code and claim the benefits of violations of that Code by an unauthorized insurer requires that a plaintiff qualify as a third-party beneficiary of the insurance policy."); *Hancock v. Walker*, 873 S.W.2d 422, 424 (Tex. App.—Fort Worth 1994, no writ).  Lincoln General has failed to demonstrate that it is either an insured or third-party beneficiary of an insured under the agreements at issue in this case.  (*See* Pl.'s Resp. 15).

(*See* Defs.' Reply 1 n.1).  The Rule 12(b)(6) portion of the Defendants' Motion to Dismiss remains pending for resolution.

Lincoln General responded to Defendants' Motion to Dismiss on February 10, 2011 (doc. 29), and Defendants filed their Reply on March 10, 2011 (doc. 37).  The Motion thus being ripe, the Court turns to the merits of its decision.

## II.

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff may support her claim for relief with any set of facts consistent with the allegations in the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P.  12(b)(6).  In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  Such a motion should only be granted when the complaint does not include "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.

## ANALYSIS

In their Joint Motion to Dismiss, the Defendants, pursuant to Rule 12(b)(6), seek dismissal of certain of Lincoln General's claims on the following grounds:

1) that Lincoln General's claim for conversion of expiring insurance policies against U.S. Auto and Santa Fe fail to state a claim because no duty is owed to Lincoln General;

2) that Lincoln General's claims for (1) conversion of expiring insurance policies, (2) breach of fiduciary duty individually against Doug Maxwell, and (3) certain claims for declaratory and injunctive relief are barred by the MOU's refiling provision;

3) that Lincoln General's claims, as an assignee of State and County, for (1) breach of fiduciary duty and conversion against U.S. Auto, (2) conversion against U.S. Auto, and (3) breach of fiduciary duty against Doug Maxwell fail to state a claim for relief because the State and County assignment to Lincoln General is invalid;

4) that Lincoln General's claims against Doug Maxwell for breach of fiduciary duty to it and to State and County fail to state a claim for relief because there is no legal basis for a fiduciary duty to exist under the circumstances; and

5) that Lincoln General's claims against Doug Maxwell, Jim Maxwell, CSI, Alpha, and Santa Fe for aiding and abetting a breach of fiduciary duty fail to state a claim for relief.

6) that Lincoln General's claims of alter ego liability against Doug Maxwell, Jim Maxwell, CSI, Alpha, and Santa Fe for U.S. Auto's breaches of contract, fiduciary duty, and conversion fail to state a claim for relief.

(Defs.' Reply 3-15).

The Court begins its analysis by addressing the Defendants' second and third grounds, above, regarding whether the MOU precludes certain of Lincoln General's claims and whether the State and County Assignment is valid.

A.    *Effect of the MOU*

Defendants contend that the MOU's limitation of remedy provision necessitates the dismissal of several of Lincoln General's claims that were not raised in the 2007 suit.  (*See* Defs.' Mot. Dismiss 28-30; 35; 40-42).  The limitation of remedy provision is located in Section IX of the MOU:

IX.    In the Event of Failure to Complete the Required Actions under This Memorandum of Understanding or Later Breach

In the event that the parties are not able to complete all of the actions required under this Memorandum of Understanding (such as final execution of the documentation contemplated herein, including but not limited to a mutually agreeable reinsurance agreement/LPT between Lincoln General and Santa Fe, the settlement agreement contemplated by section X, or the posting of appropriate security), Lincoln's sole remedy shall be to refile the lawsuit.

(Mem. of Understanding § IX).  Defendants maintain that the language "Lincoln's sole remedy shall be to refile the lawsuit" unambiguously evinces the parties' intent that any subsequent lawsuit only contain the claims of the original 2007 suit.  (Defs.' Mot. Dismiss 30).

Lincoln General responds that other provisions within the MOU would be rendered meaningless were the Court to accept Defendants' construction of Section IX.  First, it argues that

Section V, dealing with dismissal without prejudice of the 2007 Action,[3] would be rendered meaningless because dismissal without prejudice is not a "final judgment," meaning that it has no binding or limiting effect on any future action. (Pl.'s Resp. 27 & n. 98). Second, Lincoln General contends that Section VI, concerning tolling,[4] would also be rendered meaningless to the extent it tolls "'all causes of action at issue in the 2007 Action, or otherwise related to the [General Agency Agreements and Reinsurance Agreement].'" (Pl.'s Resp. 27 (quoting Mem. of Understanding § VI)). Section VI of the MOU also states that "[i]t is intended that this tolling agreement shall extend to, but not be limited to, Lincoln General's 'Other Causes of Action' detailed in the April 28, 2008 letter agreement between Lincoln General [and Defendants]." (Mem. of Understanding § VI).

---

[3]Section V of the MOU provides:

    V.       Dismissal Without Prejudice

Upon execution of this Memorandum of Understanding, which the parties agree is sufficiently definite to allow the parties to sue for its enforcement, Lincoln General shall dismiss its case without prejudice as to all defendants, and the Parties shall execute tolling and other litigation resumption agreements.

[4]Section VI of the MOU provides:

    VI.    Tolling

The Parties agree to toll the running of the statute of limitations as to all causes of action at issue in the above Lawsuit or otherwise related to the 2002 GAA, 2002 Q/S, 2003 GAA, 2003 Q/S, and all addenda to those agreements, for five (5) years or until all claims on policies subject to those agreements have been paid and settled between the Parties pursuant to any and all agreements between them (including this Memorandum of Understanding and any agreements entered into subsequent to this Memorandum of Understanding). It is intended that this tolling agreement shall extent to, but not be limited to, Lincoln General's "Other Causes of Action" detailed in the April 28, 2008 letter agreement between Lincoln General, U.S. Auto, Gamma, CS[I], Alpha, and Doug Maxwell. It is further intended that this tolling agreement extends to any defenses, counterclaims, or equitable theories U.S. Auto or other Defendants are asserting in the Lawsuit at the time of its dismissal without prejudice. All claims, defenses, counterclaims, or equitable theories will have the same limitations posture as they had in the lawsuit prior to its dismissal.

When construing a written instrument like the MOU, the principal aim of the court is to discern the true intent of the parties as conveyed through the terms of the instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-312 (Tex. 2005). In determining the parties' intent, the Court looks to the objective intentions expressed in the contract itself. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Thus, a contract should be construed according to its plain meaning unless the contract itself shows the parties intended a different meaning. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The Court must be mindful that the parties to a writing will not include a clause unless they intend it to have some effect. *Westwind Exploration v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985). If a certain construction of the contract renders a clause meaningless, that reading is unreasonable and therefore not favored. *Id.*

If there is no ambiguity in an agreement, the court may construe the agreement as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* However, when a contract can only be reasonably interpreted one way, "'[t]he failure to include more express language of the parties' intent does not create an ambiguity.'" *Instone Travel Tech Marine & Offshore v. Int'l. Shipping Partners*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996)). Neither Lincoln General nor Defendants contend that any provision in the MOU is ambiguous. (*See* Defs.' Mot. Dismiss 29-30; Pl.'s Resp. 26-28).

The parties do not dispute that Texas contract law applies to the instant dispute, nor that parties may limit the available remedies in case of non-performance under a contract. (*See* Defs.'

Mot. Dismiss 30 (citing several sources)).  Instead, the central dispute is whether the parties intended for Section IX to prohibit Lincoln General from filing any claims that were not a part of the 2007 lawsuit.  Based on the plain language of the MOU, the Court concludes that the parties did not intend to so limit a successive suit.

As stated above, the Court is mindful that a proper construction of a contract is one in which the interpretation of any one clause does not render another clause meaningless.  *See Westwind Exploration*, 696 S.W.2d at 382.  The Court need only look at Section VI's treatment of tolling to determine that Defendants' interpretation falls far short of this test.  First, Section VI establishes tolling for "all causes of action at issue in [the 2007 Action] *or otherwise related to* the [General Agency Agreements and Reinsurance Agreement]."  (Mem. of Understanding § VI (emphasis added)).  Limiting the potential causes of action in the instant case would render the "or otherwise related to" language in the tolling provision meaningless.  Thus, "otherwise related to the [Agreements]" would include Lincoln General's additional claims for conversion of expiring policies, breach of fiduciary duty, or declaratory and injunctive relief Lincoln General now leveled in the 2010 suit.  While Defendants argue that this "otherwise related" language refers to claims that might arise while the MOU is in place and not claims existing prior to the formation of the MOU, Defendants noticeably do not point to any language in the MOU to support this theory.  (*See* Defs.' Reply 6).

Defendants' position is further debunked by other language in Section VI: "[T]his tolling agreement shall extend to, but not be limited to, Lincoln General's 'Other Causes of Action' detailed in the April 30, 2008 letter agreement between Lincoln General [and Defendants]."  (Mem. of

Understanding § VI).  The April 30, 2008 letter, which Lincoln General attached to its Response,[5] specifically delineates each of the causes of action asserted in the original 2007 suit.  (*See* Apr. 30, 2008 Letter, Pl.'s Resp. Ex. H).  Thus, the MOU's statement that its tolling provisions are "not . . . limited to" the contents of the letter necessarily means that the parties intended to toll the statute of limitations as to claims not included in the original suit.  Furthermore, the language of the April 30, 2008 letter itself is broad, using language such as "includes, *but is not limited to*," "by Defendants *and/or other persons or entities*," and "such claims may encompass actions seeking legal or equitable relief for, *among other things*, . . . ."  (*Id.* (emphasis added)).  While Defendants attempt to assign import to the fact that none of the extra claims included in the April 30, 2008 letter were the claims added in the 2010 case, the Court is unconvinced.  (*See* Defs.' Reply 6).

Accordingly, the Court finds that the MOU unambiguously refuses to limit the available causes of action in the 2010 suit to those delineated in the 2007 suit.  Defendants' Motion to Dismiss, to the extent it seeks the dismissal of Lincoln General's claims for conversion of expiring insurance policies, breach of fiduciary duty individually against Doug Maxwell, and declaratory and injunctive relief because of the MOU's limitation of remedy provision, is therefore **DENIED**.

B.      *State and County Assignment*

Defendants also claim that the "Assignment of Rights" (the "Assignment") between State and County and Lincoln General is invalid, and thus the Court should dismiss any claim asserted by Lincoln General purportedly assigned by State and County.  Defendants maintain that the

---

[5] "A court is permitted . . . to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).  Defendants do not object to Lincoln General's reference to the letter.  Moreover, the letter is referenced in the MOU, which was attached as Exhibit B to Lincoln General's Original Complaint.

Assignment is void because it contains a "revocability clause," which they claim is impermissible under Texas law. (Defs.' Mot. Dismiss 31-32). Defendants alternatively contend that public policy grounds also render the Assignment void because State and County's revocation of the Assignment would disrupt the litigation process. (*Id.* at 32). Lincoln General responds that the language of the Assignment only permits termination of the agreement, not revocation, and that nevertheless Texas Law does not uniformly bar revocable assignments. (Pl.'s Resp. 30-31). Moreover, Lincoln General claims that because the Assignment is not revocable, the Defendants' public policy concerns are unfounded. (*Id.* at 30-32).

Under Texas law, an assignment is simply a transfer or setting over of property, or some right or interest, from one person to another. *Univ. of Tex. Med. Branch v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no writ). One such "right or interest" is the assignment of a claim or "chose in action." *See PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd.*, 146 S.W.3d 79, 87 & n. 31 (Tex. 2004). An assignment operates as a contract between the assignor and assignee, and thus contract law governs the interpretation of assignments. *Id.*; *Cadle Co. v. Henderson*, 982 S.W.2d 543, 546 (Tex. App.—San Antonio 1998, no pet.). In construing a contract, a court must be mindful that the parties to a writing will not include a clause unless they intend it to have some effect. *Westwind Exploration*, 696 S.W.2d at 382. Thus, if a certain construction of the contract renders a clause meaningless, that reading is unreasonable and therefore not favored. *Id.*

Here, State and County agreed to assign to Lincoln General its right to sue U.S. Auto, but retained the ability to terminate the Assignment at will. The Assignment reads:

> 1.    State and County hereby assigns only those rights it has, or could have, against U.S. Auto under the Agreements, and at law and equity, necessary for Lincoln General to pursue the Litigation. State and County shall have the right to

*terminate* this Assignment at any time for any reason upon written notice to Lincoln General.

(Pl.'s Compl. Ex. C. at 2) (emphasis added). Interpreting this provision so as to accord meaning to each phrase, Lincoln General and State and County unequivocally intended to allow State and County to terminate the assignment at will. Defendants contend that this phrase violates Texas assignment law, rendering the assignment invalid, and leaving Lincoln General with no ability to sue on State and County's behalf. (Defs.' Mot. Dismiss 31-32).

Under Texas law, "[an] assignor, after an unqualified assignment and notice to the obligor, *generally* loses all control over the chose . . . ." *Allan*, 777 S.W.2d at 453 (emphasis added). As authority for this proposition, the court in *Allan* cited § 112 of American Jurisprudence's treatment of assignments. *Id.* Section 112 warns that "[t]he operation and effect of an assignment may be limited by exceptions, reservations, conditions, or restrictions, so long as the restrictions do not violate any statutory provisions or general rules of policy." 6 Am. Jur. 2d *Assignments* § 112 (1963). Thus, while an assignment generally results in a total loss of control by the assignor, the parties may contractually afford the assignor the ability to terminate the assignment. Defendants do not and indeed cannot point to any case or statute that says the Court should ignore the manifested intent of the parties in declaring the assignment void on revocability grounds.[6] Instead, by incorporating § 112, Texas courts have unequivocally established that absent statutory or public policy concerns,

---

[6]Defendants do cite one case in support of their position, *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711 (Tex. App.—Dallas 2004, no pet.). In *Johnson*, the Court stated, "[a]fter making a valid assignment, an assignor loses all control over the chose and can do nothing to defeat the rights of the assignee." *Id.* at 722. Defendants contend that this means that an assignor must always lose complete control of a chose for an assignment to be valid. (Defs.' Mot. Dismiss 31-32). However, *Johnson*'s sole source of authority for this proposition is *Allan*, which as noted above, states that an assignor "generally" loses all control and adopts § 112's rejection of the argument that parties cannot restrict an assignment in such a fashion.

parties may draft an assignment that allows the assignor to terminate the assignment at will.

Defendants' alternative contention is that the State and County Assignment should be declared invalid as against public policy. Under Texas law, an assignment becomes invalid whenever it "may increase or distort litigation", and assignments are prohibited when they "may skew the trial process, confuse or mislead the jury, promote collusion among nominal adversaries, or misdirect damages from more culpable to less culpable defendants." *PPG Indus.*, 146 S.W.3d at 90. Defendants argue that if State and County can revoke Lincoln General's right to sue at any time, State and County may sit on the sidelines of litigation and revoke Lincoln General's right to sue at the moment the litigation is going unfavorably. (Defs.' Mot. Dismiss 32-33). Lincoln General counters that Defendants misunderstand the distinction between termination, the word used in the Assignment, and revocation or recision. (Pl.'s Resp. 30). Lincoln General claims that while revocation or recision restores parties to the position they were in before the contract existed, termination is a prospective remedy that only eliminates rights which have not vested. (*Id.*). Defendants respond that this alleged distinction does not bear any weight in the instant case because even if State and County can merely "terminate" the agreement, such termination would still disrupt the litigation process. (Defs.' Reply 8-10). The parties' arguments thus turn on the question of whether State and County's ability to "terminate" the assignment would have a disruptive effect, if any effect at all, on this litigation.

Texas courts agree that "[t]he purpose of rescission is to place the parties in the position that they would have occupied if no such contract had ever been made." *In re SeaQuest Diving, LP*, 579 F.3d 411, 419 (5th Cir. 2009) (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 855 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)); *see also Sid Richardson Carbon & Gasoline Co. v.*

*Interenergy Res., Ltd.*, 99 F.3d 746, 754 (5th Cir. 1996) ("Under Texas law, parties may mutually agree to 'rescind' a contract, restoring the status quo ante."). However, Texas law is unclear as to the precise effect a "termination" has on the parties' rights under a contract. *See Sid Richardson*, 99 F.3d at 754.

In considering the distinction between "recision" and "termination" at length, the Fifth Circuit in *Sid Richardson* noted that "[t]he Uniform Commercial Code . . . defines 'termination' as a prospective remedy only . . . ," not a retroactive remedy that extinguishes vested rights. *Id.* (citing Tex. Bus. & Com. Code §  2.106(c)). The court also pointed to several other authorities that similarly distinguish between termination and rescission. *See id.* at 754 n. 8 (citing Restatement (Second) of Contracts §  283 cmt. a (1981) and Corbin on Contracts §1266 at 66-67 (1962)). Nevertheless, the court, noting that its purpose in interpreting the contract was to "vindicate the intent of the parties," found Texas law to be too ambiguous to establish one uniform definition of "termination." *Id.* at 754. Instead, the Court looked to the terms of the contract. *Id.* The contract itself did not create an unambiguous meaning of "terminate," and it was instead found to be ambiguous. *Id.*

In keeping with the Fifth Circuit's opinion, the Court finds Texas law ambiguous as to the meaning of "terminate," as the parties have not cited, nor has the Court found, a single case since *Sid Richardson* that sets out the term's meaning. Thus, the Court looks to the terms of the assignment itself to ascertain the intention of the parties. However, here too, the parties have not pointed to, nor has the Court found, any language in the Assignment that would indicate what effect the parties intended the term "terminate" to have, and particularly what rights each party would have concerning litigation commenced prior to such termination. A motion to dismiss is not the

proper stage for a court to consider extrinsic evidence of contracting parties' intent, and the parties properly have not offered any.  The parties may raise their arguments concerning the State and County Assignment once again, if proper, at summary judgment.

For the foregoing reasons, Defendants' Motion to Dismiss, in so far as it seeks dismissal of Lincoln General's claims for breach of fiduciary duty and conversion against U.S. Auto, conversion against U.S. Auto, and breach of fiduciary duty against Doug Maxwell because of the State and County Assignment, is **DENIED**.

C.      *Defendants' Grounds 1,4, 5, and 6 for Dismissal*

Having considered Defendants' threshold challenges to Lincoln General's claims involving the MOU and the State and County Assignment, the Court now turns to the remaining claims the Defendants move to dismiss.

i.      Conversion of Expired Insurance Policies (Ground 1)

Lincoln General claims that because U.S. Auto defaulted under the terms of the GAA and Reinsurance agreements, U.S. Auto was required to turn over all of its expiring insurance policies to Lincoln General.  (Pl.'s Original Compl. ¶ 84).  Lincoln General further asserts that U.S. Auto then misappropriated or converted those policies by giving them to Santa Fe, when the property rightfully belongs to Lincoln General.  (*Id.*).

In addition to their argument that this claim is precluded by the MOU, Defendants also contend that this claim should be dismissed because U.S. Auto did not owe any duty to Lincoln General.  (Defs.' Mot. Dismiss 28-29).  More specifically, Defendants argue that Lincoln General plead only that U.S. Auto and Santa Fe converted policies owing to it, not State and County, the only party to which Defendants might owe a duty with this claim.  However, the Court finds that

any doubt in this respect is easily resolved in favor of Lincoln General.  It is manifest from Lincoln General's Complaint, when viewed in its entirety, that Lincoln General seeks to utilize the rights assigned to it by State and County.  (*See id.* ¶ 6 ("Prior to filing this Second Lawsuit, Lincoln General obtained an assignment of all rights State and County . . . has, or could have, against U.S. Auto arising out of the GAAs and Reinsurance Agreements, at law, and in equity.").  Furthermore, Lincoln General's conversion claim is premised on U.S. Auto and Santa Fe's converting property they no longer had use of and control over under the GAAs.  (*Id.* ¶¶ 84-86).  It would be unduly burdensome and unnecessary to require Lincoln General to specifically replead that the converted polices were owned by State and County.  Indeed, it is evident from Defendants' briefing that they had notice of and anticipated that Lincoln General was likely bringing this claim on State and County's behalf.  (*See* Defs.' Mot. Dismiss 29 n. 15).

Accordingly, Defendants' Motion to Dismiss Lincoln General's conversion claims is hereby **DENIED**.

### ii.    Doug Maxwell's Breach of Fiduciary Duty (Ground 4)

Lincoln General alleges Doug Maxwell, as director, President, Vice President, Treasurer, and Secretary of U.S. Auto, breached his fiduciary duties arising under the Reinsurance Agreements and GAAs.  (Pl.'s Original Compl. ¶¶ 99-103).  Defendants move to dismiss this claim, arguing that Lincoln General has failed to adequately plead the existence of any fiduciary owed by Doug Maxwell to Lincoln General or State and County.  (Defs.' Mot. Dismiss 34-35).  Lincoln General responds that Maxwell has a fiduciary duty arising from any one of three sources: (1) the Texas insurance code; (2) Texas common law; and (3) bankruptcy law.  (Pl.'s Resp. 30-37).

In Texas, the elements for breach of fiduciary duty consist of: (1) the existence of a fiduciary

relationship between plaintiff and defendant; (2) a defendant's breach of the fiduciary duty it owed plaintiff; and (3) the breach either caused injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).   Texas law recognizes two types of fiduciary duties. *Id.* at 283.  "The first, a formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" *Id.* (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).   Thus, an agent has a duty to deal fairly with the principal in all transactions between them. *Id.*   The second is created informally, "where there is a close personal relationship of trust and confidence." *Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006).  This second type of fiduciary duty arises from a "moral, social, domestic, or purely personal relationship of trust and confidence." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).

        The Court examines each of Lincoln General's three legal bases for Doug Maxwell's fiduciary duty in turn.

### a.    Texas Insurance Code

        Lincoln General first alleges that the Texas Insurance Code gives rise to a fiduciary duty owed by Doug Maxwell to State and County.  (Pl.'s Resp. 33-34).  Specifically, Lincoln General claims Maxwell held an individual managing general agent's license, which in turn gave rise to a fiduciary duty owed to State and County under the Texas Insurance Code.  (*Id.* at 34).  The Texas Insurance Code provides that "[a] managing general agent holds money on behalf of an insured or insurer in a fiduciary capacity . . . ." Tex. Ins. Code § 4053.106.  However, Defendants respond that Maxwell did not act as the managing general agent in the contract at issue, and thus § 4053.106 is

inapplicable.  (Defs.' Reply 11).

Indeed, Lincoln General does not assert anywhere in its Complaint that Doug Maxwell served as either its own or State and County's managing general agent, the only basis for liability under the statute.  Accordingly, Lincoln General's argument based on the Insurance Code is fundamentally defective.  If Doug Maxwell did indeed serve in such a role, Lincoln General should have the opportunity to amend its Complaint to include that allegation, as described in Section IV below.

<b>b.</b>    <u>Texas Common Law</u>

Lincoln General also maintains that Texas common law imposes a fiduciary duty on Doug Maxwell as the president and sole shareholder of U.S. Auto.  (Pl.'s Resp. 34-35).  In support of this position, Lincoln General relies wholly on *Colonial Penn Ins. v. Mkt. Planners Ins. Agency*, 157 F.3d 1032 (5th Cir. 1998).  In that case, the Fifth Circuit found that a president of an insurance agency could be held jointly and severally liable for unremitted premiums on insurance.  Defendants counter that *Colonial Penn* turned on the fact that the president was also acting as a local recording agent, not merely the president, while Maxwell was clearly not an agent.  (Defs.' Reply 12).

Lincoln General's reliance on *Colonial Penn* is misplaced.  That case does not stand for the proposition that a president of a company may be liable to a third-party for his actions as president, rather liability in that case fundamentally turned on the question of whether the president also served as a local recording agent.  *See Colonial Penn*, 157 F.3d at 1037.  In its Original Complaint, Lincoln General alleges that Doug Maxwell, "[b]y virtue of his position as the sole director, President, Vice President, Treasurer and Secretary of U.S. Auto, . . . is charged with fiduciary responsibilities in regards to U.S. Auto's activities arising from the Reinsurance Agreements and

- 18 -

GAAs." (Pl.'s Original Compl. ¶ 100).  Nowhere does Lincoln General allege that Doug Maxwell served as any type of agent.  Thus, there is no allegation that Doug Maxwell's conduct gave rise to any duties not ordinarily owed by corporate officers, directors, or shareholders.  Indeed, Lincoln General does not point out, nor could the Court find, any case applying Texas law where an individual officer, director, or shareholder of a company who was not also an agent was found to owe a fiduciary duty to a third-party doing business with that company.

The Court therefore finds no common law basis in Lincoln General's Complaint upon which to impose a separate fiduciary duty on Doug Maxwell.

<u>c.</u>      <u>Bankruptcy Law</u>

Finally, Lincoln General claims that several bankruptcy cases from varying jurisdictions stand for the proposition that an officer of an insurance agency owes a fiduciary duty to the insurance company his agency represents.   (Pl.'s Resp. 35).   Defendants argue that Lincoln General misunderstands the scope and outcome of these cases, that the cases are non-instructive, and that they are contrary to settled Texas law.  (Defs.' Reply 12-15).

The Court once again agrees that Lincoln General's reliance on these cases is misplaced. The bankruptcy cases Lincoln General relies upon involve the application of Section 523(a)(4) of the Bankruptcy Code.  (*See* Pl.'s Resp. 34-37).  That provision provides that "(a) A discharge under section 727 of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4). In other words, a debtor may not discharge debt acquired by fraud or defalcation.  *See id.*  The cases cited by Lincoln General arise from situations where a debtor attempted to discharge debts that creditors alleged were acquired by fraudulent acts carried out while the debtor was acting as a

fiduciary.  *See, e.g., Capital Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121 (6th Cir. 1985).

However, none of the five cases cited by Lincoln General applies Texas law.  As the Fifth Circuit has explained, "'[t]he scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists.'"  *In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004) (quoting *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993) (citation omitted)).  Thus, in order for the statute to apply, there must be a sufficient basis in state law to say a fiduciary duty existed.  *Id.*  The fiduciary duty required by Section 523(a)(4) is narrowly defined and only applies to technical or express trusts. *In re Bennett*, 989 F.2d at 785.  "The trust obligations necessary under [S]ection 523(a)(4) can arise pursuant to a statute, common law or a formal trust agreement."  *Id.*

None of the cases Lincoln General cites applies Texas law.  Even if they did, bankruptcy is a unique situation from the instant case—bankruptcy courts often consider greater equitable and public policy concerns.  *See, e.g., Sun Life Ins. Co. of Am. v. Koszuth (In re Koszuth)*, 43 B.R. 104 (Bankr. M.D. Fla. 1984).  The Court is simply unconvinced that it should interpret bankruptcy courts' examinations of other states' common law to create a fiduciary duty under Texas law.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (admonishing against judicial creation of legal duty previously unannounced under Texas tort law); *Bren-Tex Tractor Co. v. Massey-Ferguson, Inc.*, 97 S.W.3d 155, 161 (Tex. App.—Houston [14th Dist.]  2003, no pet.) (same).

Because Lincoln General has failed to persuade the Court as to any of its three legal bases for Doug Maxwell's owing a fiduciary duty to Lincoln General or State and County, Defendants'

Motion to Dismiss is **GRANTED** as to that claim.

> iii.   Doug Maxwell, Jim Maxwell, CSI, Alpha, and Santa Fe's Aiding and
>
> Abetting U.S. Auto's Breaches of Fiduciary Duty (Ground 5)

Lincoln General alleges Doug Maxwell, Jim Maxwell, CSI, Alpha, and Santa Fe actively aided U.S. Auto's breach of fiduciary duties.  (Pl.'s Original Compl. ¶¶ 104-107).  As to Jim Maxwell, CSI, Alpha, and Santa Fe, Defendants' only basis for dismissal is that they cannot be liable for aiding and abetting because Lincoln General has failed to properly plead U.S. Auto's breach of fiduciary duty.  As discussed above, however, the Court finds that the claim is adequately plead.  As to Doug Maxwell, Defendants also contend that he cannot be individually liable for aiding and abetting a breach of fiduciary duty by U.S. Auto because, as the President of U.S. Auto, he is not a third party to the breach.   (Defs.' Mot. Dismiss 36).

"It is settled as the law of [Texas] that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such."  *Kinzbach Tool Co. v. Corbett Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).  Neither party offers any case law defining the term third party; however, Defendants assert that the president of a company cannot aid and abet a breach of fiduciary duty by the company because corporate officers are not third-parties to their companies.  (Defs.' Reply 15).

Under Texas law, corporate officers may be liable for the torts of their companies: "A corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has either actual or constructive knowledge of the tortious conduct." *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 701 (Tex. App.—Fort Worth 2006, pet. denied); *see also Marken Enter.'s, Inc. v. State*, No. 03-98-00352-CV, 1999 WL 162809, at *2 (Tex.

App.—Austin, Mar. 25, 1999, no pet.) ("[A]n officer or agent of the corporation may be held liable for the tax receipts based on his own individual tortious conduct in instigating, aiding or abetting . . ."); *Earthman's Inc. v. Earthman*, 526 S.W.2d 192, 206 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) ("[W]here corporate directors and officers actively participate in the conversion of another's property by instigating, aiding or abetting the corporation, they may be held liable as joint tortfeasors with the corporation."). Thus, there is no reason to believe, as Defendants suggest, that corporate officers are given blanket immunity on the basis of their status within the corporation.

Because on the face of Lincoln General's Complaint Doug Maxwell's conduct might possibly establish him as a third-party that is subject to liability for aiding and abetting his company's breach of fiduciary duty, Defendants' Motion to Dismiss as to this claim is **DENIED** as well.

> iv.     Doug Maxwell, Jim Maxwell, Gamma, CSI, Alpha, and Santa Fe's Alter Ego
>         Liability for U.S. Auto's Conduct (Ground 6)

Defendants also move to Dismiss Lincoln General's claims of alter ego liability against Doug Maxwell, Jim Maxwell, CSI, Alpha, and Santa Fe for U.S. Auto's breaches of contract, fiduciary duty, and conversion. (Defs.' Mot. Dismiss 26-27). Lincoln General, in its Response, withdrew these claims. (Pl.'s Resp. 38). Accordingly, Defendants' Motion to Dismiss with respect to these claims is **GRANTED**.

Finally, Defendants also seek the dismissal of Lincoln General's claim for attorney's fees against Doug Maxwell, Jim Maxwell, Gamma, CSI, Alpha, and Santa Fe because those claims are in turn dependent upon Lincoln General's claims based on alter ego liability. (Defs.' Mot. Dismiss 8-9). Because Lincoln General has withdrawn those claims, to the extent it seeks attorney's fees from Defendants Doug Maxwell, Jim Maxwell, Gamma, CSI, Alpha, or Santa Fe based on an alter

ego theory of liability, Defendants' Motion to Dismiss is **GRANTED**, and those claims are **DISMISSED**.

## IV.

## CONCLUSION

Defendants' Motion to Dismiss Pursuant to Rule 12(b)(4) and 12(b)(5) is **DENIED as moot** in light of Defendants' withdrawal of that Motion in their Reply.

Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is hereby **GRANTED in part** and **DENIED in part**. Defendants' Motion is **GRANTED** to the extent it seeks dismissal of Lincoln General's claims against Doug Maxwell for breach of fiduciary duty, against Doug Maxwell, Jim Maxwell, Gamma, CSI, Alpha, and Santa Fe based on an alter ego theory of liability, and against those same defendants for attorneys fees stemming from the alter ego theory of liability. Defendants' Motion is **DENIED** as to all other claims.

If Lincoln General wishes to amend its claim against Doug Maxwell for breach of fiduciary duty, it must move for leave to do so **on or before Tuesday, September 5, 2011**. Otherwise, the dismissals granted in this Order are **with prejudice**.

SO ORDERED.

DATED August 18, 2011

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE